CT Corporation

**Service of Process Transmittal**
12/08/2016
CT Log Number 530306548

**TO:** Alicia Odette
Porsche Cars North America, Inc.
1 Porsche Dr
Atlanta, GA 30354-1654

**RE:** **Process Served in Minnesota**

**FOR:** Porsche Cars North America, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | State of Minnesota, etc., and Minnesota Pollution Minnesota Pollution, Pltfs. vs. Volkswagen Aktiengesellschaft, etc., et al., Dfts. // To: Porsche Cars North America, Inc. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Attachment(s) |
| **COURT/AGENCY:** | HENNEPIN COUNTY - FOURTH JUDICIAL DISTRICT COURT, MN Case # NONE |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect - Audi's Model Year 2004-2008 V6 |
| **ON WHOM PROCESS WAS SERVED:** | CT Corporation System, Inc, Saint Paul, MN |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/08/2016 at 11:18 |
| **JURISDICTION SERVED :** | Minnesota |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days of the date on which you received this Summons |
| **ATTORNEY(S) / SENDER(S):** | KATHERINE T. KELLY 445 Minnesota Street, Suite 1200 St. Paul, MN 55101-2130 651) 757-1308 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1Z0399EX0119243954 |
| | Image SOP |
| | Email Notification, Alicia Odette  alicia.odette@porsche.us |
| | Email Notification, Amy McLaren  cls-ctsopsupport@wolterskluwer.com |
| | Email Notification, Sherie Boykin  sherie.boykin@porsche.us |
| **SIGNED:** | CT Corporation System, Inc |
| **ADDRESS:** | 1010 Dale St. N. Saint Paul, MN 55117-5603 |
| **TELEPHONE:** | 216-802-2121 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**EXHIBIT D**

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

Case Type: Other Civil
(Environmental)

State of Minnesota, by its Attorney General,
Lori Swanson, and the Minnesota Pollution
Control Agency,

Court File No. _____

Plaintiff,

vs.

**SUMMONS**

Volkswagen Aktiengesellschaft d/b/a
Volkswagen Group and/or Volkswagen AG;
Volkswagen Group of America, Inc.; Audi
AG; Dr. Ing. h.c.F. Porsche AG d/b/a
Porsche AG; and Porsche Cars North America,
Inc.,

Defendants.

THIS SUMMONS IS DIRECTED TO VOLKSWAGEN AKTIENGESELLSCHAFT D/B/A
VOLKSWAGEN GROUP AND/OR VOLKSWAGEN AG; VOLKSWAGEN GROUP OF
AMERICA, INC.; AUDI AG; DR. ING. H.C.F. PORSCHE AG D/B/A PORSCHE AG; AND
PORSCHE CARS NORTH AMERICA, INC.,

1.     **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The

Plaintiff's Complaint against you **is attached to this summons.** Do not throw these papers

away. They are official papers that affect your rights. You must respond to this lawsuit even

though it may not yet be filed with the Court and there may be no court file number on this

summons.

2.     **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.**

You must give or mail to the person who signed this summons a written response called an

Answer within 20 days of the date on which you received this Summons. You must send a copy

of your Answer to the person who signed this summons located at:   445 Minnesota Street, Suite 1200, St. Paul, Minnesota 55101-2130.

3.     **YOU MUST RESPOND TO EACH CLAIM.**  The Answer is your written response to the Plaintiff's Complaint.  In your Answer you must state whether you agree or disagree with each paragraph of the Complaint.  If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4.     **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.**  If you do not Answer within 20 days, you will lose this case.  You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint.  If you do not want to contest the claims stated in the complaint, you do not need to respond.  A default judgment can then be entered against you for the relief requested in the complaint.

5.     **LEGAL ASSISTANCE.**  You may wish to get legal help from a lawyer.  If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance.  **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

2

6.     **ALTERNATIVE DISPUTE RESOLUTION.**  The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice.   You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated:  December 8, 2016                    LORI SWANSON
                                            Attorney General
                                            State of Minnesota

                                             /s/ Katherine T. Kelly
                                            KATHERINE T. KELLY
                                            Assistant Attorney General
                                            Atty. Reg. No. 0337535
                                            445 Minnesota Street, Suite 1200
                                            St. Paul, MN 55101-2130
                                            Telephone:  (651) 757-1308
                                            Fax:  (651) 296-7438
                                            katherine.kelly@ag.state.mn.us

                                            ATTORNEYS FOR PLAINTIFF
                                            STATE OF MINNESOTA

## MINN. STAT. § 549.211 ACKNOWLEDGMENT

The party on whose behalf the attached document is served acknowledges through its undersigned counsel that sanctions, including reasonable attorney fees and other expenses, may be awarded to the opposite party or parties pursuant to Minn. Stat. § 549.211.

                                             /s/ Katherine T. Kelly
                                            KATHERIN T. KELLY

3

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                              FOURTH JUDICIAL DISTRICT

                                                     Case Type:  Other Civil
                                                              (Environmental)

State of Minnesota, by its Attorney General,     Court File No. _____
Lori Swanson, and the Minnesota Pollution
Control Agency,

                    Plaintiff,                            **COMPLAINT**

        vs.

Volkswagen Aktiengesellschaft d/b/a
Volkswagen Group and/or Volkswagen AG;
Volkswagen Group of America, Inc.; Audi
AG; Dr. Ing. h.c.F. Porsche AG d/b/a
Porsche AG; and Porsche Cars North America,
Inc.,

                    Defendants.

        The State of Minnesota, by its Attorney General, Lori Swanson, and the Minnesota

Pollution Control Agency, for its Complaint against Volkswagen Aktiengesellschaft d/b/a

Volkswagen Group and/or Volkswagen AG, Volkswagen Group of America, Inc., Audi AG, Dr.

Ing. h.c.F. Porsche AG d/b/a Porsche AG, and Porsche Cars North America, Inc., (collectively

"Defendants" or "Volkswagen") hereby states and alleges as follows:

## INTRODUCTION

        1.      A motor vehicle's air pollution control system is supposed to mitigate the harmful

air pollutants, including nitrogen oxides, emitted by the vehicle's engine.  For over ten years,

Volkswagen carried out a scheme to render inoperative the air pollution control systems in

certain diesel engine vehicles it sold and leased in Minnesota.  It did so by installing illegal

devices in these vehicles that recognized when the vehicles were being tested on a laboratory

treadmill.  When the illegal device detected that the vehicle was undergoing laboratory testing, it

                                            1

would activate or increase the effectiveness of the vehicle's air pollution control system. During every day, real-world driving conditions, however, the device would render the vehicle's air pollution control system inoperative. From 2008 through 2015, Volkswagen sold and leased more than 11,500 tampered vehicles in Minnesota.

2.      Volkswagen marketed its diesel engine vehicles to Minnesotans as new "clean diesel" vehicles that are not only quiet, fuel efficient, and high performing, but also environmentally friendly by emitting low levels of nitrogen oxides. Nitrogen oxides produce ground-level ozone, also known as smog. Smog can make breathing difficult, especially for people who suffer from conditions like asthma, chronic bronchitis, or emphysema. The tampered vehicles that Volkswagen sold and leased in Minnesota emitted up to 35 times the legal limit of nitrogen oxides.

3.      Volkswagen has admitted, both publicly and to the State of Minnesota, to installing devices that tamper with, alter, and render inoperative the air pollution control systems in certain diesel engine vehicles it sold and leased in Minnesota, in violation of Minnesota's anti-tampering laws. The State of Minnesota, by its Attorney General, Lori Swanson, and the Minnesota Pollution Control Agency, brings this action to enforce Minnesota's anti-tampering laws.

## PARTIES

4.      Lori Swanson, the Attorney General of the State of Minnesota, is authorized under Minnesota Statutes Chapter 8, including sections 8.01 and 8.31, and has common law authority, including *parens patriae* authority, to bring this action on behalf of the State of Minnesota and its citizens to enforce Minnesota law.

2

5.      The Minnesota Pollution Control Agency is a statutory agency of the State of Minnesota responsible for, among other things, administering and enforcing rules prohibiting the removal, alteration, or operating status of any motor vehicle air pollution control system. The Minnesota Pollution Control Agency is authorized under Minnesota Statutes section 115.071 to initiate enforcement actions in district court related to the violation of any rule it has issued.

6.      Defendants are the German automaker Volkswagen AG, and its subsidiaries Audi AG and Porsche AG, and their wholly-owned American affiliates and subsidiaries, VW of America, and Porsche North America, Inc.

7.      Volkswagen Aktiengesellschaft d/b/a Volkswagen Group and/or Volkswagen AG ("Volkswagen AG") is a corporation organized under the laws of Germany and has its principal place of business in Wolfsburg, Germany. According to Volkswagen AG's 2015 Annual Report, its sales revenue for North America was over $39.6 billion in 2015 (over $8.7 billion more than in 2014).

8.      Volkswagen AG is the parent company of the Volkswagen Group ("VW Group")—an organizational and trade term referring to Volkswagen AG's automotive brands (including Volkswagen Passenger Cars and subsidiaries Audi and Porsche) and financial services business.

9.      Each brand in the VW Group also has its own Brand Board of Management. The members of the Brand Boards of Management manage their respective brands, pursuant to targets and requirements laid down by the Volkswagen AG Board of Management.

10.     Volkswagen Group of America, Inc., ("VW of America") is a New Jersey corporation that is registered to do business in Minnesota. VW of America's principal place of business is located at 2200 Ferdinand Porsche Drive, Herndon, Virginia. It is a wholly-owned

3

subsidiary of Volkswagen AG, and is closely controlled and directed by Volkswagen AG. Within VW of America, the Engineering and Environmental Office ("EEO") interacts with United States regulators and handles regulatory compliance and certification-related issues for Volkswagen AG and Audi AG.

11.     Audi AG ("Audi") is a member of the VW Group.  Audi is a corporation organized under the laws of Germany and has its principal place of business in Ingolstadt, Germany.  Volkswagen AG, which owns 99.55% of Audi's stock, controls Audi.  Audi of America, LLC, also known as Audi of America, Inc., ("Audi of America") is an operating unit of and wholly owned by VW of America.  VW of America is responsible for the acts of Audi of America in Minnesota and the United States.  Audi of America is closely controlled and directed by Volkswagen AG and Audi AG.  Audi of America, Inc., is registered as an assumed name in Minnesota.

12.     Dr. Ing. h.c. F. Porsche d/b/a Porsche AG ("Porsche") is a member of the VW Group.  Porsche is a corporation organized under the laws of Germany, has its principal place of business in Stuttgart, Germany, and is a wholly-owned subsidiary of Volkswagen AG.

13.     Porsche Cars North America, Inc., ("Porsche NA") is a Delaware corporation that is registered to do business in Minnesota, and has its principal place of business at One Porsche Drive, Atlanta, Georgia.  Porsche NA is a wholly-owned subsidiary of Porsche and is closely controlled and directed by Porsche.

**JURISDICTION AND VENUE**

14.     This Court has jurisdiction over the subject matter of this action pursuant to Minnesota Statutes sections 8.01, 8.31, 325E.0951, and 115.071, and Minnesota Rules part 7023.0120 (2016).

15.     Volkswagen AG, and its subsidiaries Audi and Porsche, designed the vehicles at issue specifically for sale to United States customers, including in Minnesota, by their United States affiliates.

16.     At all relevant times, Volkswagen AG, Audi, and Porsche acted with and through their United States affiliates, in particular, VW of America's Michigan-based EEO and Porsche NA, to obtain legal certification to the sell the vehicles at issue in the United States, including in Minnesota.

17.     At all relevant times, Volkswagen AG, Audi, and Porsche oversaw the sales and marketing efforts of their United States affiliates' actions in the United States, including in Minnesota.

18.     The Defendants transact business in Minnesota through at least 10 Minnesota Volkswagen dealers located in:  St. Paul, Minneapolis, Inver Grove Heights, St. Louis Park, Brooklyn Center, Maplewood, Rochester, Burnsville, Mankato, and Duluth.

19.     This Court has personal jurisdiction over all Defendants because they transacted business in Minnesota and committed acts inside and outside Minnesota causing injury to Minnesota and its citizens and residents in violation of Minnesota law.  The exercise of jurisdiction over all Defendants is consistent with due process.

20.     Venue in Hennepin County is proper under Minnesota Statutes section 542.09 because the cause of action arose, in part, in Hennepin County.

## FACTUAL ALLEGATIONS

I.     DEFENDANTS KNOWINGLY SOLD VEHICLES CONTAINING ILLEGAL DEFEAT DEVICES THAT TAMPER WITH AIR POLLUTION CONTROL SYSTEMS IN MINNESOTA.

21.     In September 2015, Volkswagen for the first time publicly announced that it had, for many years, installed illegal devices that tampered with and altered the air pollution control

5

systems in its diesel turbocharged direct injection ("TDI") 2.0-liter light-duty vehicles. As revealed by Volkswagen's subsequent admissions and the State's investigation, Volkswagen knowingly designed and installed the illegal devices, known as "defeat devices," in all of its 2.0- and 3.0-liter TDIs ("Subject Vehicles") sold and leased in the United States, including in Minnesota, from 2008 through 2015.

22.    The Subject Vehicles emitted up to 35 times the legal limit of nitrogen oxides ("$NO_x$"). The pollutant, $NO_x$, is the generic term for a group of nitrogen-based compounds that are produced by the combustion engines of motor vehicles, among other sources. The emission of high levels of $NO_x$ has long been a particular problem for diesel engines.

23.    Volkswagen's defeat-device scheme began when it decided to transform the reputation of its diesel engines among some American consumers as noisy, smog-inducing engines into ones that would deliver fuel efficiency, high performance, and low $NO_x$ emissions. Volkswagen marketed its defeat-device equipped diesel vehicles with slogans and tag-lines such as:

- "Diesel has really cleaned up its act";

- "Di*sel – it's no longer a dirty word"; and

- "The Volkswagen TDI engine is cleaner than conventional diesels, emitting as much as 95% less soot than previous diesel engines, as well as a reduction in oxides of nitrogen and sulphur."

24.    $NO_x$ negatively impacts the health of Minnesotans and Minnesota's environment in a variety of ways. For example, $NO_x$ contributes to fine particulate matter and ground-level ozone, also known as smog. Children, the elderly, people with heart and lung diseases such as asthma, chronic obstructive pulmonary disease (COPD), and emphysema, and people who work or exercise outside, are especially susceptible to adverse effects on their lungs due to smog. The

6

presence of $NO_x$ can also reduce driving visibility in urban areas and elsewhere. $NO_x$ also contributes to the formation of acid rain. In addition, $NO_x$ emissions can increase the nitrogen load in bodies of water, thereby upsetting the chemical balance of nutrients relied upon by aquatic plants and animals by causing harmful algal blooms that deplete the oxygen content of the water. Algal blooms can make water uninhabitable for fish populations and aquatic plants.

25.    In developing a purported "clean diesel" vehicle for the United States market, Volkswagen faced numerous challenges in engineering diesel engines that did not generate excessive $NO_x$ and soot. As explained below, Volkswagen chose not to spend the time or money necessary to address these engineering challenges in a lawful manner. Instead, Volkswagen developed defeat devices that turn on the vehicle's air pollution control systems only when the device detects they are being tested on a treadmill in a laboratory. When the defeat device software detects such testing, it activates or increases the effectiveness of the vehicle's emissions controls. In real world driving conditions, however, the defeat device software lowers the emissions controls, essentially rendering them inoperative.

26.    According to Volkswagen's records, it sold or leased more than 11,500 defeat device-equipped vehicles in Minnesota, spanning several vehicle lines and diesel engine models. Throughout this Complaint:

a.    the 2.0-liter Generation 1/EA-189s, the Generation 2/EA-189s, and Generation 3/EA-288s will be referred to, respectively, as "Generation 1s," "Generation 2s," and "Generation 3s," and collectively as the "2.0s";

b.    the 3.0-liter models will be referred to collectively as the "3.0s"; and

c.    the 2.0s and 3.0s are referred to collectively as "the Subject Vehicles."

7

27.     Volkswagen's Subject Vehicles include the following makes and models sold or leased in the United States, including in Minnesota, for the 2009 through 2016 model years:

**2.0 Liter Diesel Models**

| Model Year | Generation (Gen)/Engine | EPA Test Group | Vehicle Make and Model(s) |
|---|---|---|---|
| 2009 | Gen 1 / EA189 | 9VWXV02.035N 9VWXV02.0U5N | VW Jetta, VW Jetta Sportwagen |
| 2010 | Gen 1 / EA189 | AVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2011 | Gen 1 / EA189 | BVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | Gen 1 / EA189 | CVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2013 | Gen 1 / EA189 | DVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2014 | Gen 1 / EA189 | EVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen |
| 2012 | Gen 2 / EA189 | CVWXV02.0U4S | VW Passat |
| 2013 | | DVWXV02.0U4S | |
| 2014 | | EVWXV02.0U4S | |
| 2015 | Gen 3 / EA288 | FVGAV02.0VAL | VW Beetle, VW Beetle Convertible, VW Golf, VW Golf Sportwagen, VW Jetta, VW Passat, Audi A3 |

**3.0 Liter Diesel Models**

| Model Year | EPA Test Group(s) | Vehicle Make and Model(s) |
|---|---|---|
| 2009 | 9ADXT03.03LD | VW Touareg, Audi Q7 |
| 2010 | AADXT03.03LD | VW Touareg, Audi Q7 |
| 2011 | BADXT03.02UG BADXT03.03UG | VW Touareg Audi Q7 |
| 2012 | CADXT03.02UG CADXT03.03UG | VW Touareg Audi Q7 |

| Model Year | EPA Test Group(s) | Vehicle Make and Model(s) |
|---|---|---|
| 2013 | DADXT03.02UG<br>DADXT03.03UG<br>DPRXT03.0CDD | VW Touareg<br>Audi Q7<br>Porsche Cayenne Diesel |
| 2014 | EADXT03.02UG<br>EADXT03.03UG<br>EPRXT03.0CDD<br>EADXJ03.04UG | VW Touareg<br>Audi Q7<br>Porsche Cayenne Diesel<br>Audi A6 Quattro, A7 Quattro, A8, A8L, Q5 |
| 2015 | FVGAT03.0NU2<br>FVGAT03.0NU3<br>FPRXT03.0CDD<br>FVGAJ03.0NU4 | VW Touareg<br>Audi Q7<br>Porsche Cayenne Diesel<br>Audi A6 Quattro, A7 Quattro, A8, A8L, Q5 |
| 2016 | GVGAT03.0NU2<br>GPRXT03.0CDD<br>GVGAJ03.0NU4 | VW Touareg<br>Porsche Cayenne Diesel<br>Audi A6 Quattro, A7 Quattro,A8, A8L, Q5 |

## II. VOLKSWAGEN'S DEFEAT DEVICE DEVELOPMENT AND IMPLEMENTATION WAS AN INTENTIONAL PROCESS IMPLEMENTED ACROSS DIFFERENT AIR POLLUTION CONTROL SYSTEMS AND THREE SEPARATE BRANDS: VOLKSWAGEN, AUDI, AND PORSCHE.

### A. The First Defeat Device: Audi's Model Year 2004-2008 V6 For the European Market.

28.     In 1999, Audi engineers at Audi headquarters in Neckarsulm, Germany, developed a new technology that could eliminate the traditional noise typical of diesel engines at start-up through the injection of additional fuel into the engine on ignition. This caused the engine, however, to exceed European emissions standards during laboratory testing.

29.     To solve this problem, Audi invented defeat device software that was able to recognize when the vehicle was undergoing testing on a laboratory treadmill and to deactivate the excess fuel-injection during such testing. Because of its noise-reducing properties, Audi dubbed this defeat device the "Acoustic Function."

**B.      The Second Defeat Device: Volkswagen's Generation 1s.**

30.      In the early-to-mid 2000s, as it was planning to launch its Generation 1 diesel engine vehicles in the United States, including in Minnesota, Volkswagen explored equipping its Generation 1 diesel engines with a urea-spraying air pollution control system, which chemically reduces $NO_x$ emissions by spraying a fluid called urea in the exhaust stream to create $N_2$ and $H_2O$. This would have required outfitting the Generation 1s (including the small, model year 2009 Jetta), however, with one or more tanks capable of storing gallons of the urea fluid.

31.      In 2006, the engineers and managers responsible for developing the Generation 1 diesel engine abandoned this urea-spraying air pollution control system and decided instead to use an air pollution control system that used catalytic converter technology that would trap $NO_x$ emissions and periodically convert the $NO_x$ into $N_2$. Early in the development of this catalytic-converter air pollution control system, it became apparent to Volkswagen's engineers that it produced too much soot.

32.      In late 2006, facing these major engineering challenges and a management-imposed production deadline, and with the knowledge and approval of their managers, Volkswagen's engineers in Wolfsburg adapted Audi's Acoustic Function defeat device to overcome these issues. Like the Audi defeat device, the defeat device Volkswagen implemented in the Generation 1s featured software that could detect when the vehicles were undergoing laboratory testing on a treadmill. During such testing, the defeat-device software, among other things, substantially increased the air pollution control system's conversion of $NO_x$ into $N_2$. In contrast, during real-world driving conditions, the defeat device software tampered with the vehicle's air pollution control systems such that fuel-efficiency increased, but soot and $NO_x$ emissions did as well.

33.     Volkswagen knowingly tampered with, adjusted, altered, changed, rendered inoperative, and/or disconnected the air pollution control systems of the Generation 1s by installing defeat devices that tampered with their catalytic-converter air pollution control systems described above.  According to Volkswagen's records, at least 7,000 of these Generation 1s with altered air pollution control systems were sold or leased in Minnesota.

**C.     The Third Defeat Device:  Audi's and Volkswagen's 3.0 SUVs.**

34.     As Volkswagen engineers in Wolfsburg were developing the Generation 1 diesel engine, their colleagues at Audi's Neckarsulm headquarters were developing a United States-market 3.0-liter diesel engine for the anticipated release of a new line of luxury diesel SUVs in the United States, including in Minnesota:  the Audi Q7 and Volkswagen Touareg.

35.     To enter the United States market, however, Audi's 3.0-liter diesel engine vehicles—which were equipped with a urea-spraying air pollution control system—would require large amounts of urea fluid, necessitating either larger urea tanks or more frequent service visits to refill them.  In or around July 2006, the problem reached the attention of Martin Winterkorn, then the CEO of Audi (later of the parent company, Volkswagen AG) as well as Matthias Müller, then the head of Project Management for Audi and now Mr. Winterkorn's successor as CEO of Volkswagen AG.

36.     Ultimately, Volkswagen and Audi decided not to expend the time and money necessary to re-engineer the 3.0s to equip them with larger urea storage tanks.  Nor did they seek to address the storage tank issue, as they could have, by shortening the length of the 3.0s service interval.  Some competitors, for example, had service intervals as low as 7,500 or even 5,000 miles.  Volkswagen and Audi, however, chose to maintain a 10,000-mile service interval to gain a competitive edge and again decided to employ a defeat device.

11

37.     Like the other defeat devices, the defeat device software in the 3.0s recognizes when the vehicle is undergoing testing on a laboratory treadmill and, among other things, increases the urea spray during such testing. During real-world driving conditions, however, the 3.0s' defeat device tampers with the urea-spraying air pollution control system by, in part, reducing the urea spray to enable the 3.0s' too-small urea tanks to last for 10,000 miles between service intervals.

38.     Volkswagen and Audi approved and installed the above-described defeat device for production into the Q7 and Touareg 3.0s for sale in the United States, including in Minnesota, from 2009 to 2015. By doing so, Volkswagen and Audi knowingly tampered with, adjusted, altered, changed, rendered inoperative, and/or disconnected the 3.0s' urea-spraying air pollution control systems.   According to Volkswagen's records, not including the Porsche Cayenne diesel SUVs discussed below, at least 1,000 3.0s containing defeat devices were sold in Minnesota.

**D.     The Fourth Defeat Device: Volkswagen's Generation 2s.**

39.     In 2009, Volkswagen began planning to roll out its Passat TDI in the United States, including in Minnesota, which was heavier than the Generation 1s and therefore unsuitable for the catalytic-converter air pollution control system they utilized. In designing a urea-spraying air pollution control system for the Passat, however, Volkswagen's engineers now faced what their Audi colleagues had confronted—insufficient space in the vehicle to incorporate urea tanks large enough to meet the 10,000-mile service interval for the Generation 2s.

40.     Rather than resolve or mitigate this engineering problem, Volkswagen again opted to implement a similar defeat device that would unlawfully tamper with the Generation 2s' urea-spraying air pollution control systems.   Once the defeat device software recognizes the

12

vehicle is being tested on a laboratory treadmill, the defeat device increases, among other things, the urea spray. Outside of test conditions, however, the defeat device alters the Generation 2s' air pollution control systems by reducing the urea-spray to allow the Generation 2s' too-small urea tanks to last for 10,000 miles between service intervals.

41.     Volkswagen knowingly tampered with, adjusted, altered, changed, rendered inoperative, and/or disconnected the urea-spraying air pollution control systems of the Generation 2s by installing the above-described defeat devices.   With the approval of Volkswagen supervisory executives, company engineers went forward with this defeat device, installing it in a minimum of 1,900 Volkswagen Passats in Minnesota, spanning from model years 2012 to 2014.

**E.     The Fifth Defeat Device:  The Porsche Cayenne.**

42.     In 2010, Volkswagen AG acquired Porsche, and the founding family of Porsche became Volkswagen's leading shareholders. The following year, Porsche, too, decided it wanted to enter the United States diesel engine vehicle market, including in Minnesota, with its new Cayenne SUV.

43.     Porsche approached its sister company, Audi, about acquiring Audi's 3.0-liter V6 diesel engine for use in the Cayenne. Audi agreed to supply Porsche the engine, lightly re-tuned for Porsche. In supplying the engine, Audi personnel educated their counterparts at Porsche about the engine's primary features, including its defeat device that tampered with and altered the vehicles' urea-spraying air pollution control systems, among other things.

44.     In communications in or around September 2011, which included Audi engineer Martin Gruber, the then-head of Volkswagen AG Engine Development, Ulrich Hackenberg, and Porsche's electronics development chief, Carsten Schauer, among others, Audi explained to

13

Porsche personnel the 3.0s' urea tank-size limitation and the resulting defeat device strategy that Audi had devised.

45.    Notwithstanding this information, Porsche's engineering department, then led by Wolfgang Hatz, proceeded to source the Audi defeat-device equipped 3.0-liter engine for its entry into the United States diesel market, including in Minnesota, with the model year 2013 Cayenne diesel SUV.  According to Volkswagen's records, at least 90 Porsche vehicles with defeat devices that tampered with, adjusted, altered, changed, rendered inoperative and/or disconnected the air pollution control systems were sold or leased in Minnesota.

F.    **The Sixth Defeat Device: Volkswagen's Generation 3s.**

46.    In or about 2013, Volkswagen discontinued the catalytic-converter systems in favor of its urea-spray systems for its Generation 3s, the model year 2015 2.0s.  It also decided to implement defeat devices in all its Generation 3s (the Beetle, Golf, Jetta, Passat, and the Audi A3).  In doing so, Volkswagen knowingly installed defeat devices that tampered with, adjusted, altered, changed, rendered inoperative and/or disconnected the urea-spraying air pollution control systems in its Generation 3s.  According to Volkswagen's records, it sold or leased at least 1,300 Generation 3s in Minnesota.

III.    **VOLKSWAGEN'S SCHEME BEGINS TO UNRAVEL AND VOLKSWAGEN FINALLY ADMITS THAT IT INSTALLED DEFEAT DEVICES THAT ALTER THE SUBJECT VEHICLES' AIR POLLUTION CONTROL SYSTEMS.**

47.    On March 31, 2014, West Virginia University's ("WVU") Center for Alternative Fuels, Engines & Emissions presented findings from a study it had conducted, which showed that two of three unnamed light duty diesel vehicles it tested emitted between five and thirty-five times more $NO_x$ during real-world driving conditions than the vehicles emitted during laboratory testing on a treadmill.  WVU's study was commissioned by the International Council on Clean

14

Transportation (the "ICCT Report"), which was concerned about the discrepancy between Volkswagen's $NO_x$ emissions in Europe versus the United States. WVU researchers conducted tests using a portable emissions measurement system—essentially a lightweight laboratory used to test and assess mobile source emissions in real-world driving conditions—rather than on a treadmill.

48.     Within days, ICCT researchers told VW of America's Engineering and Environmental Office ("EEO") that the vehicles that appeared to have air pollution control systems that did not function appropriately included a 2012 Jetta (a Generation 1) with a catalytic-converter air pollution control system and a 2013 Passat (a Generation 2) with a urea-spraying air pollution control system.

49.     Soon thereafter, VW of America's EEO began fielding calls and requests for reports and analyses of the ICCT Report from multiple high-ranking Volkswagen executives, including Michael Horn (then-CEO and President of VW of America), Carsten Krebs (a Director at VW of America), Frank Tuch (then-head of Group Quality Management for Volkswagen AG), Bernd Gottweis (then-head of Product Safety within Volkswagen AG Group Quality Management) and Christian Klingler (then-Volkswagen AG Management Board member responsible for Sales and Marketing).

50.     For the next 17 months, from May 2014 until September 3, 2015 (and beyond for the 3.0s), Volkswagen waged a campaign to mislead and confuse the public about Volkswagen's installation and sale of vehicles with illegal defeat devices that tampered with, adjusted, altered, changed, rendered inoperative and/or disconnected the vehicles' air pollution control systems.

51.     Not until September 3, 2015, did Volkswagen finally admit that it had installed illegal defeat devices in its vehicles. That September, for the first time outside the companies,

15

Volkswagen admitted that the Generation 2s' engine contained a defeat device that has two calibrations: one for real world driving (Calibration 1) and one for testing (Calibration 2). In Calibration 1, Volkswagen disclosed that, among other things, the urea-spray is lowered. In Calibration 2, Volkswagen disclosed that the urea-spray is increased. In addition, Volkswagen provided greater detail regarding the enable/disable values for these calibrations.

52.     On October 8, 2015, Mr. Horn admitted in his testimony before the United States House of Representatives Subcommittee on Oversight and Investigations Committee on Energy and Commerce that VW of America's and Volkswagen AG's installation of defeat devices in the 2.0-liter Subject Vehicles was a knowing and willful decision to deceive regulators and consumers.

53.     On November 19, 2015, VW of America and Audi of America admitted to regulators that all 3.0s from model years 2009 through 2016 had similar defeat devices that tampers with, adjusts, alters, changes, removes, renders inoperative and/or disconnects the vehicles' air pollution control systems.

54.     On September 9, 2016, a Volkswagen engineer pleaded guilty in U.S. District Court for the Eastern District of Michigan for his 10-year role in Volkswagen's defeat device scheme.    According to the plea agreement, the engineer admitted to helping design and implement the defeat device used in the EA189 engines for sale in the United States. From 1983 until 2008, he worked in Volkswagen AG's diesel development department in Wolfsburg, Germany, and from 2008 through 2016, he worked in VW of America's California testing facility.

55.     On June 27, 2016, Volkswagen executed a partial settlement agreement with the State of Minnesota ("Partial Settlement Agreement" or "PSA"). On November 14, 2016, the

State filed an Assurance of Discontinuance ("Assurance") in Ramsey County District Court further memorializing the PSA, which the Court entered on November 18, 2016. The PSA and Assurance partially settled the State's claims related to Minnesota Statutes sections 325F.67 (False Statement in Advertisement Act), 325F.69 (Consumer Fraud Act), and 325D.44 (Deceptive Trade Practices Act). The PSA and Assurance, however, did *not* settle or resolve the State's consumer protection claims under these statutes against Volkswagen regarding the 3.0s, in part, because Volkswagen has not yet proposed an acceptable fix to ensure that the 3.0s air pollution control systems are fully functional during real-world driving conditions.

56.    In the PSA and Assurance, Volkswagen admits the following, among other things:

> (a) that software in the 2.0 Liter Subject Vehicles enables the vehicles' [engine control module] to detect when the vehicles are being driven on the road, rather than undergoing Federal Test Procedures; (b) that this software renders certain emission control systems in the vehicles inoperative when the [engine control module] detects the vehicles are not undergoing Federal Test Procedures[.]

The PSA and Assurance also enjoin Volkswagen from "advertising, marketing, offering for sale, selling, offering for lease, leasing, or distributing in Minnesota any vehicle that contains a Defeat Device."

57.    Paragraph 8.B of the PSA and Paragraph 12.B of the Assurance expressly preserve the State's anti-tampering claims under Minnesota Statutes section 325E.0951 and Minnesota Rules part 7023.0120 (2015). Specifically, in Paragraph 12.B of the Assurance the State reserves and did not settle, release, or resolve:

> any claims, rights and remedies against Volkswagen, Porsche and their affiliates . . . including, without limitation . . . any claims arising under state environmental laws and regulations, including laws and regulations regarding . . . anti-tampering provisions (including but not limited to Minn. Stat. § 325E.0951 and Minn. R. 7023.0120)

17

58.     Volkswagen's admission that it installed software that rendered inoperative emissions control systems is an admission that it knowingly tampered with, adjusted, altered, changed, rendered inoperative and/or disconnected the 2.0-liter Subject Vehicles' air pollution control systems in violation of Minnesota Statutes section 325E.0951 and Minnesota Rules part 7023.0120.

IV.   **DEFENDANTS ACTED IN CONCERT TO TAMPER WITH THE SUBJECT VEHICLES' AIR POLLUTION CONTROL SYSTEMS AND CONCEAL THE EXISTENCE OF THE DEFEAT DEVICES.**

59.     At all times material to this Complaint, Defendants worked in concert with the common objective of engaging in the illegal defeat-device scheme described in this Complaint. Each of the Defendants was, and still is, the agent of the others for this purpose, and each has acted, and is acting, for the common goals and profit of them all.  Therefore, all acts and knowledge ascribed to one of them are properly imputed to the others.  Among other things:

a.     Volkswagen AG allocates and controls the overall research and development and marketing budgets for the brands in the VW Group;

b.     Audi of America is an operating unit of VW of America; and

c.     The three brands (Volkswagen, Audi, and Porsche) share engineering research and development and engine concepts and designs, including but not limited to Volkswagen's incorporation of Audi-designed software and hardware elements into its EA 189 diesel engine for the Generation 1s and Generation 2s, and Porsche's use of the Audi 3.0-liter diesel engine for its Cayenne SUV Subject Vehicle.

60.     Officers and employees of Defendants, including several of those involved in the unlawful conduct described in this Complaint, are shared among Defendants, and moved from the employ of one Defendant to another.

18

61.     At a minimum, each of the Defendants knowingly and intentionally provided each of the other Defendants with substantial assistance, or aided and abetted one another, in carrying out individual company-by-company unlawful defeat device schemes, as described in this Complaint.

62.     Each Defendant engaged in violations of Minnesota Statutes section 325E.0951 and Minnesota Rules part 7023.0120.

63.     Until September 2015, each Defendant fraudulently concealed and failed to disclose to the State of Minnesota and the public that it had installed illegal defeat devices in the Subject Vehicles sold in the United States, including in Minnesota.

64.     The conduct of Volkswagen AG, VW of America, Audi, Porsche, and Porsche NA alleged in this Complaint was knowing and willful.

## COUNT I
## MOTOR VEHICLE AIR POLLUTION CONTROL SYSTEMS ACT
## MINNESOTA STATUTES SECTION 325E.0951

65.     The State re-alleges all prior paragraphs of this Complaint.

66.     Minnesota Statutes section 325E.0951, subdivision 2(a), provides that "[a] person may not knowingly tamper with, adjust, alter, change, or disconnect any air pollution control system on a motor vehicle or on a motor vehicle engine."

67.     Defendants repeatedly violated Minnesota Statutes section 325E.0951, subdivision 2(a), ·by knowingly tampering with, adjusting, altering, changing, and/or disconnecting the Subject Vehicles' air pollution control systems through installing defeat devices in the Subject Vehicles it sold and leased in Minnesota.

68.     Defendants' conduct, practices, and actions, described in this Complaint constitute multiple, separate violations of Minnesota Statutes section 325E.0951.

19

## COUNT II
## ENFORCEMENT OF THE MINNESOTA POLLUTION CONTROL AGENCY'S AIR POLLUTION CONTROL SYSTEMS RESTRICTIONS RULE MINNESOTA RULES PART 7023.0120

69.     The State re-alleges all prior paragraphs of this Complaint.

70.     Pursuant to Minnesota Statutes section 116.07, in 2005 the Minnesota Pollution Control Agency adopted and issued Minnesota Rules part 7023.0120, which provides that "[n]o person shall remove, alter, or otherwise render inoperative any air pollution control system."

71.     Defendants repeatedly violated Minnesota Rules part 7023.0120 by selling and leasing Subject Vehicles in Minnesota containing defeat devices that remove, alter, and/or otherwise render inoperative the Subject Vehicles' air pollution control systems.

72.     Defendants' conduct, practices, and actions, described in this Complaint constitute multiple, separate violations of Minnesota Rules part 7023.0120.

### PRAYER FOR RELIEF

WHEREFORE, the State of Minnesota, by its Attorney General, Lori Swanson, and the Minnesota Pollution Control Agency, respectfully requests a jury trial and asks this Court to award judgment against Defendants as follows:

1.     Declaring that Defendants' actions, as set forth above, constitute multiple separate violations of Minnesota Statutes section 325E.0951 and Minnesota Rules part 7023.0120;

2.     Awarding judgment against Defendants solely for the recovery of civil penalties pursuant to Minnesota Statutes section 8.31, subdivision 3, for each separate violation of Minnesota Statutes section 325E.0951 and/or pursuant to Minnesota Statutes section 115.071, subdivisions 1 and 3, for each separate violation of Minnesota Rules part 7023.0120;

3.     Awarding the State its costs, including costs of investigation and attorney's fees, as authorized by Minnesota Statutes sections 8.31, subdivision 3a and 115.072; and

20

Case 3:17-cv-00187-CRB   Document 1-4   Filed 12/22/16   Page 25 of 30

4.      Granting such further relief as provided by law or as the Court deems appropriate

and just.

Dated: **12/8/2016**

LORI SWANSON
Attorney General
State of Minnesota

JAMES W. CANADAY
Deputy Attorney General

JASON PLEGGENKUHLE
Assistant Attorney General

KATHERINE T. KELLY
Assistant Attorney General
Atty. Reg. No. 0337535

445 Minnesota Street, Suite 1200
St. Paul, Minnesota 55101-2130
katherine.kelly@ag.state.mn.us
(651) 757-1308 (Voice)
(651) 296-1410 (TTY)

*Attorneys for Plaintiff, State of Minnesota by its
Attorney General, Lori Swanson, and the
Minnesota Pollution Control Agency*

## MINNESOTA STATUTES SECTION 549.211 ACKNOWLEDGMENT

The parties on whose behalf the attached document is served acknowledges through its undersigned counsel that sanctions, including reasonable attorney fees and other expenses, may be awarded to the opposite party or parties pursuant to Minnesota Statutes section 549.211.

KATHERINE T. KELLY

22

## STATE OF MINNESOTA

**District Court**

HENNEPIN COUNTY

| | |
|---|---|
| Judicial District: | FOURTH |
| Court File Number: | |
| Case Type: | OTHER CIVIL |

State of Minnesota, by its Attorney General
Lori Swanson and the Minnesota Pollution
Control Agency,

                         Plaintiff,

vs

Volkswagen Aktiengesellschaft d/b/a
Volkswagen Group and/or Volkswagen AG;
Volkswagen Group of America, Inc.;
Audi AG; Dr. Ing. h.c.F. Porsche AG
d/b/a Porsche AG; and Porsche Cars North
America, Inc.,

                        Defendants.

### Civil Cover Sheet
### (Non-Family Case Type)
Minn. R. Gen. Prac. 104

Date Case Filed:  December 8, 2016

    }

ATTORNEY FOR PLAINTIFF

Katherine T. Kelly
Attorney Name

445 Minnesota Street, Suite 1200
Postal Address

St. Paul, MN  55101
City             State       Zip Code

(651) 757-1308
Telephone Number

katherine.kelly@ag.state.mn.us
E-mail address

ATTORNEY FOR DEFENDANTS

unknown
Attorney Name

Postal Address

City             State       Zip Code

(    )
Telephone Number

E-mail address

0337535
_____
Minnesota Attorney License No.

PLAINTIFF, Self-represented

_____
Name

_____
Postal Address

_____
City          State        Zip Code

(    )
_____
Telephone Number

_____
E-mail address


_____
Minnesota Attorney License No.

DEFENDANTS, Self-represented

_____
Name

_____
Postal Address

_____
City          State        Zip Code

(    )
_____
Telephone Number

_____
E-mail address

1.      Provide a concise statement of the case including facts and legal basis:

This is a civil environmental enforcement action by the State of Minnesota, through its Attorney General Lori Swanson and the Minnesota Pollution Control Agency, against Volkswagen Aktiengesellschaft d/b/a Volkswagen Group and/or Volkswagen AG; Volkswagen Group of America, Inc.; Audi AG; Dr. Ing. h.c.F. Porsche AG d/b/a Porsche AG; and Porsche Cars North America, Inc., ("Volkswagen"), which are diesel vehicle manufacturers and sellers. Volkswagen installed illegal defeat devices in certain vehicles sold in Minnesota that tampered with and altered the vehicles' air pollution control systems in violation of Minnesota's Motor Vehicle Air Pollution Control Systems Act (Minn. Stat. § 325E.0951) and Air Pollution Control Systems Restrictions Rule (Minn. R. P. 7023.0120). The State of Minnesota, through its Attorney General and the Minnesota Pollution Control Agency, brings this enforcement action to obtain penalties for Volkswagen's violations.

2.      Date Complaint was served:  December 8, 2016.

3.      For Expedited Litigation Track (ELT) Pilot Courts only:

        a. ☐ the parties jointly and voluntarily agree that this case shall be governed by the

            Special Rules for ELT Pilot. Date of agreement: _____

2

b. ☐ The court is requested to consider excluding this case from ELT for the following

reasons: _____

Note: ELT is mandatory in certain cases, and where mandatory, exclusion may also be

sought by timely motion under the Special Rules for ELT Pilot.

c. Anticipated number of trial witnesses: _____

d. Amount of medical expenses to date: _____

e. Amount of lost wages to date: _____

f. Identify any known subrogation interests: _____

4. Estimated discovery completion within <u>6</u> months from the date of this form.

5. Disclosure / discovery of electronically stored information discussed with other party?

X No ☐ Yes, date of discussion: _____

If Yes, list agreements, plans, and disputes: _____

6. Proposed trial start date: <u>December 11, 2017.</u>

7. Estimated trial time: <u>5</u> days _____ hours (estimates less than a day must be stated in hours).

8. Jury trial is: <u>Requested.</u>

☐ waived by consent of _____ pursuant to Minn. R. Civ. P. 38.02.
(specify party)

☐ requested by _____ (NOTE: Applicable fee must be enclosed)
(specify party)

9. Physical/mental/blood examination pursuant to Minn. R. Civ. P. 35 is requested:

☐ Yes     X No

10. Identify any party or witness who will require interpreter services, and describe the services needed (specifying language, and if known, particular dialect): <u>None known.</u>

11. Issues in dispute: <u>Defendants' tampering and altering of air pollution control systems in vehicles sold in Minnesota in violation of the State's anti-tampering laws.</u>

12. Case Type / Category: <u>14/Other Civil</u> (NOTE: select case type from Form 23, Subject Matter Index for Civil Cases, appended to the Minnesota Rules of Civil Procedure).

3

13.   Recommended Alternative Dispute Resolution (ADR) mechanism: <u>Mediation</u>.

(See list of ADR processes set forth in Minn. Gen. R. Prac. 114.02(a))

Recommended ADR provider (known as a "neutral"): <u>To be determined</u>.

Recommended ADR completion date: <u>June 15, 2017</u>.

If applicable, reasons why ADR not appropriate for this case: _____

---

By signing below, the attorney or party submitting this form certifies that the above information is true and correct.

Submitted by:

LORI SWANSON
Attorney General
State of Minnesota

 /s/ Katherine T. Kelly
KATHERINE T. KELLY
Assistant Attorney General
Atty. Reg. No. 0337535
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Telephone:  (651) 757-1308
Fax:  (651) 296-7438
katherine.kelly@ag.state.mn.us

ATTORNEYS FOR PLAINTIFF
STATE OF MINNESOTA

Date: December 8, 2016

4